UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

LEONARDO LEVETTE MCMILLAR, )
)
   Movant, )
)
v. )   CV418-259
)   CR412-017
UNITED STATES OF AMERICA, )
)
   Respondent. )

## REPORT AND RECOMMENDATION

Movant Leonardo Levette McMillar moves under 28 U.S.C. § 2255 to vacate his 2012 conviction for possession of a firearm by a felon and in relation to a drug trafficking offense. Docs. 75, 82 & 83; [1] *see* docs. 3 (indictment), 38 (change of plea), 46 (plea agreement), 48 (judgment for 180 months' imprisonment). He alleges that prosecutorial misconduct invalidates his plea and sentence. Doc. 75.

A bit of background is warranted. The lead prosecutor in this case, former Assistant United States Attorney Cameron Ippolito, was publicly censured for personal and professional misconduct. Several cases that

---

[1] The Court is citing to the criminal docket in CR412-017 unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

she (and her paramour, ATF Agent Lou Valoze) worked on together were unwound entirely. Their transgressions — as related to this matter — were twofold. First, their affair spanned 2009 through March 2014, the length of the undercover storefront operation that snagged McMillar. Second, they made misleading statements on an "S Visa" application they submitted for a non-citizen informant. Four criminal cases in which Agent Valoze testified about material matters at trial and at sentencing were reopened as a result of the disclosure. *See generally In re Ippolito*, 2015 WL 424522 at * 1 (S.D. Ga. Jan. 30, 2015) (Court's public censure). McMillar's case was identified as one of those potentially affected by Ippolito's improper relationship with Valoze. *Id.*

Some twenty months later, on September 23, 2016, McMillar signature-filed a *pro se* "motion to dismiss the indictment and suppress evidence" based upon the Ippolito-Valoze affair. Docs. 60 & 62. McMillar then found counsel and recharacterized his motion as one to vacate his sentence pursuant to 28 U.S.C. § 2255. Docs. 67 & 75. The Court, upon screening, left open the question of timeliness. Doc. 76 at 4 n. 2 (permitting McMillar to amend his motion, finding the date of his original motion would control, but making no finding as to whether that motion

2

was timely filed).

The Government moves to dismiss McMillar's motion as untimely. Doc. 78. McMillar, it argues, was represented by Amy Lee Copeland, who also represented three of the four defendants whose cases were specifically reopened based on the Government's disclosure of the Ippolito affair. Ms. Copeland, accordingly, filed motions for new trial or sentencing on behalf of those defendants. As part of those motions, she represented that she had received a copy of the Government's disclosure of the affair. *See United States v. Brown*, CR210-31, doc. 177 at 7 (S.D. Ga. Feb. 10, 2015).[2] Thus, the Government argues, McMillar could have learned about the possibility that the affair affected his case through his appointed counsel long before the filing deadline. Doc. 78 at 6-7. The Government's initial disclosure, however, did not have McMillar's name listed. Doc. 82 at 4.

The Court is not confident, therefore, that counsel informed McMillar in January 2015, when she received notice about the potential

---

[2] The Government also argues that McMillar's current retained counsel "was a main player in litigating" several Ippolito-effected cases and thus had knowledge of the looming deadline. Doc. 78 at 7. But his future counsel's knowledge cannot be logically imputed to McMillar, incarcerated and filing a motion *pro se*.

compromise of her *other* clients' cases. *See* doc. 83 (Affidavit of Amy Lee Copeland) at ¶ 7 & 11 (explaining that she had a vague recollection of speaking with McMillar or his spouse about the affair but did not recall forwarding McMillar a copy of the Government's disclosure because she was no longer representing him and, perhaps, because she "determined that it would have no effect on his case."). The earliest McMillar might reasonably have learned that his case was potentially affected by Ippolito and Valoze's indiscretion was on February 11, 2015, when the Government named him in a list of cases they had worked on. *In re: Ippolito and Valoze*, MC215-002, doc. 4, Exh. A at 12 (S.D. Ga. Feb. 11, 2015). That list was available on the public docket at a time that the affair was well publicized and widely discussed amongst the prisoners incarcerated because of the storefront operations Statesboro Blues, Thunderbolt, and Pulaski. *Id.*; *see In re Ippolito*, 2015 WL 424522.

The Court finds McMillar's argument that he could not have learned of the affair in February 2015, however, incredible. Had he utilized anything approaching "due diligence," *see* 28 U.S.C. § 2255(f)(4), the list naming his case as one possibly impacted would have been readily accessible. His unsupported argument that the Government had to serve

him with a copy of its disclosure to trigger the one-year deadline to seek collateral relief is meritless. *See* doc. 82. McMillar's motion is untimely filed and should be **DENIED** on that ground alone. The Court, however, also recognizes the serious nature of Ippolito's and Valoze's misconduct and the potential mischief it wreaked. The Court therefore will evaluate the merits of McMillar's argument that the belated disclosure of the Ippolito-Valoze affair violates *Brady* and the Southern District's open file rule. Docs. 75 & 82.

The Government argues that it has *no* duty to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant. Doc. 78 at 7-8 (citing *United States v. Ruiz*, 536 U.S. 622, 633 (2002)). And McMillar pleaded guilty, waiving all of his trial rights, including the right to receive material impeachment information. Doc. 46. The Government's failure to disclose that information does not render his guilty plea unknowing or involuntary. Doc. 78 at 8 (citing *United States v. Baez-Arrogo*, 553 F. App'x 922, 925 (11th Cir. 2014) (government's failure to disclose impeachment evidence does not make defendant's guilty plea involuntary or unknowing) & *Davidson v. United States*, 138 F. App'x 238, 239 (11th Cir. 2005) (new information that

would-have impeached a search warrant affidavit does not unwind defendant's guilty plea); *see also Carter v. United States*, 2017 WL 1028584 at *2 (S.D. Ga. Mar. 16, 2017) (citing same cases and finding that *Ruiz* applies to the cases affected by the Ippolito-Valoze affair).

McMillar rejects this line of cases, arguing that the Court's Local Rules and the Government's open file policy required the Government to affirmatively disclose any impeachment evidence independent of *Ruiz*. Doc. 75 at 4; doc. 82 at 6-7. But even a close reading of Local Rule 16.1 only requires the Government to permit defense counsel to inspect and copy the evidence it holds. S.D. Ga. L. R. 16.1. Nothing in the Rule refers to the disclosure of impeachment information. And aside from his reference to the Government's open file policy — again, permitting the inspection and copying of the evidence it holds against the defendant — McMillar cites no case law requiring pre-plea disclosure of *Brady* evidence. *See* docs. 75 & 82; *see generally Brady v. United States*, 397 U.S. 742, 757 (1970) ("A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the [Government's] case.").

Misconduct claims justify relief on collateral review only if the

prosecutor's actions rendered the proceedings "so fundamentally unfair as to deny [a defendant] due process." *Davis v. Zant*, 36 F.3d 1538, 1545 (11th Cir. 1994). Movants thus must show that there is "a reasonable probability that the outcome was changed" by the prosecutor's actions. *Id*. McMillar's lack of compromising information that — only hypothetically, it must be remembered[3] — might have resulted in dismissed indictment (and thus never reaped a plea agreement) does nothing to unwind his knowing and voluntary plea, based on his unambiguous admission of guilt. Docs. 75 at 4-5 & 82 at 7. His motion to vacate his sentence because of prosecutorial misconduct, therefore, should also be **DENIED** on the merits.

---

[3] Movant contends that, had the Government only disclosed its employees' dalliance sooner, "there would have been no prosecution of McMillar. Agent Valoze was a necessary witness for the prosecution and without Agent Valoze the Government would have dismissed the indictment." Doc. 75 at 4. But all the outrage in the world does not manufacture a claim for collateral relief. After all, Ippolito was not the only Assistant United States Attorney available to prosecute the case, and Agent Valoze did not testify during the case. *See* doc. 39 (minutes for Rule 11 hearing reflecting Agent Daryl McCormick testified for the Government); doc. 77 at 27-31 (Agent McCormick's testimony at the Rule 11 hearing, setting forth the factual basis of the charge against McMillar). McMillar's argument that the Ippolito-Valoze affair would be such "damning *Brady-Giglio* evidence" that no plea would have been entered simply ignores this Court's cases tainted by that affair. *E.g., Carter*, 2017 WL 1028584. "Even if the Court assumes that contemporaneous knowledge of Ippolito's affair would have utterly destroyed her [and Agent Valoze's] credibility," *neither testified* in McMillar's case. *Vasquez v. United States*, 206 WL 4186716 at *3 (S.D. Ga. Aug. 5, 2016).

7

In sum, the Government's motion to dismiss Leonardo Levette McMillar's 28 U.S.C. § 2255 motion should be **GRANTED** (doc. 78) and McMillar's § 2255 motion to vacate his sentence should be **DENIED** (doc. 75) both as untimely and on the merits.[4]  For the reasons set forth above, it is plain that he raises no substantial claim of deprivation of a constitutional right.  Accordingly, no certificate of appealability should issue.  28 U.S.C. § 2253; Fed. R. App. P. 22(b); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy

---

[4] Because movant's motion is meritless and his contentions are contradicted by the record, an evidentiary hearing is not warranted. *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (a hearing is unnecessary "if the allegations are 'patently frivolous,' 'based upon unsupported generalizations,' or 'affirmatively contradicted by the record.'"); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (same); *Lynn,* 365 F.3d at 1239 (where the motion "amount[ed] to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion.").

on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this  3rd  day of July, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA